UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JINGHUA CHEN,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary of Department of Homeland Security; et al.,<br><br>　　　　　　Defendants. | C06-1760Z<br><br>ORDER |

This matter comes before the Court on Defendants' Motion for Summary Judgment, docket no. 18.  Having considered the briefs and declarations in support of, and in opposition to, the motion, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment, docket no. 18.

## **Background**

*Pro se* Plaintiff Jinghua Chen is a thirty-five year old male citizen of China.  Harrison Decl., docket no. 18, Ex. B, ¶ 3.  On December 30, 1996, Plaintiff was admitted to the United States for the duration of his status as an F1 non-immigrant student.  Id.  On June 24, 2002, his status changed to H1B, a non-immigrant employment category, until June 17, 2005.  Id.  On May 24, 2004, Plaintiff applied for adjustment of status on Form I-485, at the United States Citizenship and Immigration Services ("USCIS") Office located in Seattle,

ORDER  1–

Washington. Id. He applied for adjustment of status under Section 245 of the Immigration and Nationality Act ("INA"), based on his marriage on January 2, 2004, to Ying Liu. Id. ¶ 4.

When an individual files an I-485 application, USCIS conducts several forms of background checks to ensure that the applicant is eligible to adjust status to lawful permanent resident and that he or she is not a risk to national security or public safety. Id. ¶ 5. One of those checks is a FBI fingerprint check for relevant criminal history records on the alien. Id. The fingerprint check for Plaintiff was cleared on August 7, 2004, and updated on March 27, 2007. Id. ¶ 7. The validity of Plaintiff's fingerprint clearance remains valid for fifteen months, until June 26, 2008. Id. Another check is conducted against the Interagency Border Inspection System ("IBIS"), which contains information related to persons who are wanted or under investigation for serious crimes of suspected terrorism-related activity. Id. ¶ 5. Plaintiff's IBIS background check cleared on June 18, 2004, was updated on October 5, 2004, and updated again on July 24, 2007. Id. ¶ 8.

In addition to the fingerprint and IBIS background checks, an FBI name check is run against FBI investigative databases. Id. ¶ 5; see also Cannon Decl., docket no. 18, Ex. A, ¶¶ 5-12 (describing name check process). The name check request for Plaintiff was received by the FBI from USCIS on or about July 27, 2004, and has not been completed. Cannon Decl. ¶ 36. Plaintiff's application for adjustment of status remains pending only for the completion of the FBI name check. Harrison Decl. ¶ 9. Once the required FBI name check is completed, USCIS asserts that Plaintiff's application "can and will be adjudicated." Id. ¶¶ 9, 16. The FBI is performing the name check in response to USCIS's request in accordance with the procedures outlined in the Cannon Declaration (described in part below). Cannon Decl. ¶ 36. The results of the name check will be forwarded to USCIS in Washington, D.C., in due course, in accordance with the FBI's normal protocol. Id. The FBI cannot provide a specific or general time frame for completing any particular name check submitted by USCIS. Id. ¶ 34.

ORDER  2–

Historically, approximately 68 percent of the name checks submitted by USCIS are electronically checked and returned to USCIS as having "No Record" within 48-72 hours. Id. ¶ 13. A "No Record" indicates that the FBI's Universal Index database contains no identifiable information regarding a particular individual. Id. For the remaining name check requests, a manual name search completed typically within 30-60 days historically identifies an additional 22 percent of the USCIS requests as having "No Record," for a 90 percent overall "No Record" response rate. Id. ¶ 14. Follow-up on the remaining 10 percent requires retrieving and reviewing electronic and paper records. See id.

There are numerous factors that contribute to delays in the processing of name check requests. Id. ¶¶ 21, 34. One is the volume of incoming name checks; incoming name checks, averaging about 71,000 per week, outpace completed name checks, averaging about 68,000 name checks per week. Id. ¶ 21. The number of "hits" on a name when it is first reviewed may further contribute to a delay in processing a name check request. Id. ¶ 22. The processing of common names also contributes to a delay. Id. ¶ 23. The accessibility of the FBI record needed for review also contributes to a delay; a record could be at one of over 265 possible locations across the country. Id. ¶ 24. None of these reasons for delay, however, have been cited as a reason why *Plaintiff's* name check has been delayed.

As directed by USCIS, the FBI processes name check requests on a "first in, first out" basis, unless USCIS directs that a name check be expedited. Id. ¶ 25; Harrison Decl. ¶ 15. Expedited name requests mean that an employee is not available to work on a normal name check request. Cannon Decl. ¶ 25; Harrison Decl. ¶ 15.

An alien who has applied for adjustment of status may apply for and obtain employment authorization for the entire time his or her application is pending. Id. ¶ 15. Most applicants for adjustment of status may also apply for and obtain advance parole to enable them to travel abroad during the pendency of their application. Id. During the continued pendency of his application, Plaintiff is entitled to apply for employment

ORDER  3–

authorization documents as well as travel documents to permit him to travel outside of the United States.  Id. ¶ 17.

On December 11, 2006, Plaintiff filed this action, asserting jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, and under the Administrative Procedures Act ("APA"), 5 U.S.C. 701 *et seq.*, in conjunction with the federal question jurisdiction statute, 28 U.S.C. § 1331.  Compl., docket no. 1, at 3.  Plaintiff seeks to compel action on his I-485 application.  Id. at 5.  Plaintiff filed suit against the following individuals: (1) Michael Chertoff, Secretary of the Department of Homeland Security ("DHS"); (2) Emilio T. Gonzalez, Director of United States Citizenship and Immigration Services ("USCIS"); (3) Robert Okin, District Director of USCIS for Seattle; and (4) Robert S. Mueller, III, Director of the Federal Bureau of Investigation ("FBI") (collectively "Defendants").  On May 4, 2007, the Court denied Defendants' Motion to Dismiss, which was brought pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction and FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Minute Order, docket no. 13 (adopting Order in C07-0096-RSM, docket no. 9).  The Court held that Defendants have a non-discretionary duty to process Plaintiff's application to adjust status.  Defendants now move for summary judgment, arguing that the Court lacks jurisdiction over all Defendants except Chertoff, and that Plaintiff cannot show as a matter of law that USCIS has unreasonably delayed the processing of his I-485 application.

## Discussion

### A.  Summary Judgment Standard

Summary judgment is appropriate when the movant demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).

ORDER  4–

### B.  Jurisdiction over USCIS and FBI

Defendants argue that the Court lacks jurisdiction over all Defendants except Michael Chertoff. Defendants rely on Dmitriev v. Chertoff, 2007 WL 1319533 (N.D. Cal. 2007), which found that "[s]ince March 1, 2003, the Department of Homeland Security is the agency responsible for implementing the Immigration and Nationality Act." Dmitriev at *4 (citing 6 U.S.C. § 271(b)(5), 557). Accordingly, the Dmitriev Court held that "the only relevant Defendant is Michael Chertoff, in his capacity as Secretary of the Department of Homeland Security," and dismissed Defendants Emilio T. Gonzalez, Director of USCIS, and Robert S. Mueller, III, Director of the FBI. Id.; accord Huang v. Chertoff, 2007 WL 1831105 at * 3 (N.D. Cal. June 25, 2007). Faced with the same issue, the Northern District of California subsequently declined to dismiss the USCIS Defendants, and only dismissed the FBI Defendant. Konchitsky v. Chertoff, 2007 WL 2070325 (N.D. Cal. July 13, 2007). The Konchitsky Court reasoned that USCIS is a division of the DHS and, thus, the Court has jurisdiction to require the USCIS Defendants to process the plaintiff's I-485 application within a reasonable amount of time. Id. at *6. As in Dmitriev, the Konchitsky Court held that the Court lacks jurisdiction to compel the FBI to perform name checks in connection with adjustment of status applications, reasoning that the FBI's involvement in processing name checks arises not by statute or regulation, but by contract between USCIS and FBI. Id. The Court agrees with the analysis in Konchitsky.

Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss all Defendants except Chertoff. The Court grants in part the motion and dismisses Robert S. Mueller, III, Director of the FBI. The Court denies in part the motion and declines to dismiss Emilio T. Gonzalez and Robert Okin.

### C.  Unreasonable Delay

Plaintiff has based his mandamus action on Sections 555(b) and 706(1) of the APA, which require Plaintiff to demonstrate that USCIS unreasonably delayed the processing of

ORDER  5–

Plaintiff's application. See 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); 5 U.S.C. § 706(1) (providing that courts shall "compel agency action unlawfully withheld or unreasonably delayed"); see Yu v. Brown, 36 F. Supp. 2d 922, 928 (D.N.M. 1999) (applying the same standards to assess the merits of claims of unreasonable agency delay that seek either mandamus or a mandatory injunction under the APA, or both). Thus, the critical question before the Court is whether there has been an unreasonable delay by USCIS in processing Plaintiff's application to adjust status.

Section 706 of the APA "leaves in the courts the discretion to decide whether agency delay is unreasonable." Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1999). The Ninth Circuit has adopted a six-factor test for determining when an agency delay is unreasonable under 5 U.S.C. § 706(1):

> (1) the time agencies take to make decisions must be governed by a 'rule of reason';
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

Brower v. Evans, 257 F.3d 1058, 1068 (9th Cir. 2001) (quoting Telecomms. Research & Action v. FCC ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984) (six factors referred to as the "TRAC factors").

ORDER  6–

The first TRAC factor requires an agency to govern decision-making with a rule of reason. Defendants argue that the FBI's "first in, first out" policy is deserving of deference, and that the FBI needs time to perform an "accurate and thorough" check. Plaintiff points out, correctly, that the FBI has provided no evidence confirming that Plaintiff's case has been processed in a "first in, first out" fashion, nor has the FBI provided any evidence as to why it needs many years to conduct an "accurate and thorough" check on Plaintiff.

The second TRAC factor requires deference to a statutory or regulatory timetable. Defendants argue that there is neither a statutory nor regulatory timetable in place for the FBI name check or USCIS's adjudication of an application to adjust status. Defendants assert that in the absence of any statutory or regulatory guidelines, the Court should consider the factors that contribute to the backlogs faced by the FBI and USCIS. See, e.g., Cannon Decl. ¶¶ 16-18 (describing growth of name check program and the implementation of more thorough searches since November 2002 due to heightened national security concerns). Plaintiff argues that the absence of a statutory or regulatory timetable does not mean that the agency can take an infinite amount of time to process Plaintiff's application. Furthermore, it has been pointed out by several courts facing the same issue that "[a]lthough Congress has not established a mandatory time frame for the USCIS to complete the adjudication, Congress sets a normative expectation in 'The Immigration Services and Infrastructure Improvements Act of 2000' of a reasonable processing time for an immigrant benefit application as no more than 180 days after initial application." Konchitsky, 2007 WL 2070325 at *4 (citing 8 U.S.C. § 1571); Abbasfar v. Chertoff, 2007 WL 2409538 at * 3 (N.D. Cal. Aug. 21, 2007) ("8 U.S.C. § 1571 provides a meaningful standard for the pace of adjudication of adjustment of status applications").

The third TRAC factor provides that delays are less tolerable when human health and welfare are at stake, as opposed to economic regulation. See Singh v. Still, 470 F. Supp. 2d 1064, 1069 (N.D. Cal. 2006) (finding human health and welfare to be at stake in

ORDER  7–

case involving delay of I-485 application to adjust status).  Defendants argue that this third factor overlaps with the fifth TRAC factor, the nature and extent of the interests prejudiced by the delay.  Defendants characterize the prejudice to Plaintiff as mere inconvenience, and point out that Plaintiff may receive employment authorization and advance parole to allow him to travel abroad during the pendency of his application.  Defendants emphasize that Plaintiff's interests are minimal as compared to the security interests of the nation, particularly in the post-9/11 era.  Plaintiff responds that he must reapply for employment authorization and advance parole every year, which costs him time and money, as well as taxpayer money.  Plaintiff's complaint also notes his interest in accruing time to be eligible for naturalization as a citizen of the United States.  Compl. at 5; see Singh, 470 F. Supp. 2d at 1070 ("Respondents' delay impacts Mr. Singh's ability to seek United States citizenship and all the rights and privileges attendant thereto.").

The fourth TRAC factor requires the Court to consider the effect of expediting delayed action on agency activities of a higher or competing priority.  Defendants argue that expediting delayed agency action will intrude on the agency's discretion to fulfill its highest priority of safeguarding the nation.  Defendants also contend that moving some individuals to the front of the queue would simply move that group ahead of others who also had been waiting, resulting in no net gain in processing.  In response, Plaintiff argues that Defendants have failed to explain, with any specificity, how expediting his application will threaten the agency's ability to safeguard the nation.

The sixth TRAC factor notes that the Court need not find any impropriety on the agency's part in order to hold that agency action is unreasonably delayed.  Neither party discusses this factor.

Overall, Defendants have failed to put forth any facts specific to Plaintiff Jinghua Chen's name check.  "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case."  Gelfer v. Chertoff,

ORDER  8–

2007 WL 902382 at *2 (N.D. Cal. Mar. 22, 2007) (citation omitted). Courts within the Ninth Circuit in similar cases have denied Rule 12(b)(6) motions to dismiss brought by the Government where USCIS has simply pointed to the FBI's failure to complete the name check, and where there were no reasons why the application was "particularly troublesome." Id. (more than two-year delay not reasonable as a matter of law); see also Konchitsky, 2007 WL 2070325 at * 6 ("without a particularized explanation for the delay . . . more than two year delay of plaintiff's application [is] unreasonable as a matter of law"); Mazouchi v. Still, 2007 WL 2070324 at * 5 (N.D. Cal. July 13, 2007) (same, as applied to four year delay); Liu v. Chertoff, 2007 WL 2023548 at * 4 (E.D. Cal. July 11, 2007) (two-and-a-half year delay not reasonable as a matter of law, noting absence of "a more particular explanation by Defendants as to the cause of the delay," despite evidence of large volume of applications received and the extensive background checks required to process them); Qiu v. Chertoff, 2007 WL 1831130 at * 3 (N.D. Cal. June 25, 2007) (no explanation, other than pending FBI name check, why application "stagnant" for three years); Huang, 2007 WL 1831105 at * 2 (despite national security concerns and increased security checks since 9/11, a more than two-year delay is unreasonable as a matter of law if there is no particular explanation as to the cause of the delay).

One case out of the Northern District of California granted summary judgment in favor of plaintiff, and ordered USCIS to complete the adjudication of the application, where USCIS failed to provide specific reasons for the delay. See Singh, 470 F. Supp. 2d at 1065, 1072 (noting the lack of specifics about "the issues requiring further inquiry" in declarations submitted by USCIS, and, alternatively, USCIS's failure to provide information via in camera review). In Singh, the Court stated that although "national security must be

ORDER  9–

considered a competing priority of the highest order[,] . . . the mere invocation of national security is not enough to render agency delay reasonable per se." Id. at 1069.[1]

The Government argues that "[m]any courts have refused to grant relief under the APA, even when naturalization or other immigration applications were pending for significant time periods." Defs.' Mot. at 13. Defendants rely on three district court cases from outside the Ninth Circuit, each of which can be distinguished. In Espin v. Gantner, the Court held that it lacked subject matter jurisdiction to compel agency action on a pending application to adjust status, finding that the action is "wholly discretionary." 381 F. Supp. 2d 261, 265 (S.D.N.Y. 2005). As previously noted, this Court, as well as other Courts in the Western District of Washington, have held that USCIS's action to adjudicate applications to adjust status is non-discretionary and, accordingly, have held that there is subject matter jurisdiction. The Espin Court also dismissed the claim for failure to state a cognizable claim based on a "limited resources" and "substantial caseload" rationale that has not been adopted by district courts within the Ninth Circuit in the absence of a particularized showing as to the individual application at issue.

Defendants rely on another district court case out of the Southern District of New York for the proposition that a high volume of applications justifies a five-year delay. See Saleh v. Ridge, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005). Defendants fail to point out that plaintiff's application to adjust status in Saleh was delayed as a result of a Congressionally-mandated cap of 10,000 on the number of asylees whose status may be adjusted to that of

---

[1] It is noteworthy, however, that, at the time summary judgment was granted in favor of Mr. Singh, Mr. Singh's FBI name check had been expedited as a result of the litigation and had cleared. Other distinguishing aspects of the Singh case are that: (1) Mr. Singh had waited seven years for adjudication, in comparison to Mr. Chen's three years; (2) USCIS was partially to blame for the delay (in addition to the FBI) because USCIS had taken two-and-a-half years to initiate the name check with the FBI, and (3) Mr. Singh's application to adjust status was based in part on a grant of asylum, which meant that the government had had an opportunity to raise national security concerns before an immigration law judge in the asylum proceedings. See Singh, 470 F. Supp. 2d at 1065, 1068-70.

ORDER   10–

1 lawful permanent resident each year, in addition to the high volume of applications based on
2 asylee status. See id. at 510, 513 (citing 8 U.S.C. § 1159(b)).  Thus, in Saleh, USCIS had
3 published a schedule setting forth the time periods during which it anticipated it would
4 consider asylees' applications according to when such applications were filed.  See id. at
5 513.  The plaintiff in Saleh filed the lawsuit prior to the expected consideration period.  See
6 id.  Here, Defendants have pointed to no cap on the number of spouses of U.S. citizens
7 whose status may be adjusted to lawful permanent resident each year.  Nor does the Court
8 have any information regarding the average time between the filing of, and consideration of,
9 adjustment of status applications for applicants generally or for applicants whose eligibility
10 is based on marriage to a United States citizen.

11 Lastly, Defendants rely on a district court case from the Northern District of Texas,
12 which held, in the naturalization context, that a 15-month delay was not unreasonable.  See
13 Alkenani v. Barrows, 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005).  The Alkenani Court in
14 dicta suggested that "delays approximating two years may be unreasonable."  Id. at 657 n.6.

15 In the present case, Mr. Chen has waited over three years for a decision and remains
16 in "perpetual limbo," id. at 657, without any particularized explanation from USCIS for the
17 delay.  Accordingly, the Court DENIES Defendants' Motion for Summary Judgment on the
18 issue of unreasonable delay.

19 **D.    Particularized Information Requested of Defendants**

20 The Court ORDERS Defendants to be on notice that the Court may *sua sponte* grant
21 summary judgment in favor of Plaintiff if Defendants fail to provide to the Court
22 particularized information that explains the over three-year delay as to Plaintiff's name
23 check.  The Court recognizes that Defendants will have to obtain this information from the
24 FBI, which is no longer a defendant in this case.  Defendants shall submit such information
25 to the Court, either through declarations or via in camera review, by **October 1, 2007**.  Any
26

ORDER   11–

brief filed in connection with the new information shall not exceed six pages. No response to the supplemental briefing shall be filed by Plaintiff unless requested by the Court.

## Conclusion

The Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment, docket no. 18. The Court grants the motion and dismisses Robert S. Mueller, III, Director of the FBI. The Court denies the motion and declines to dismiss Emilio T. Gonzalez and Robert Okin. The Court denies the motion on the issue of unreasonable delay. The Court ORDERS Defendants to provide particularized information to the Court that explains the over three-year delay as to Plaintiff's name check, by **October 1, 2007**.

IT IS SO ORDERED.

DATED this 30th day of August, 2007.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER  12–